Lamb, Receiver, v. Morris.

there is no error in the record for which the judgment ought to be reversed.

Judgment affirmed, with costs.

Filed March 29, 1889.

118   179
125   585
118   179
147    90
─────────
118   179
149   547
149   549
118   179
153    51

No. 14,810.

## LAMB, RECEIVER, v. MORRIS.

BANK.—*Right to Apply Deposit to Payment of Note.—Suretyship.*—A bank has no right, without the depositor's consent, to apply money due him as a depositor to the payment of a note held by the bank, upon which he is liable as surety.

SAME.—*Contract.—Equitable Appropriation of Deposit.—Promissory Note.— Receiver.*—Where a bank, holding an overdue note upon which a depositor is surety, agrees with the latter that an amount of his account equal to the note shall be considered as applied in payment thereof at any time, and that the note shall be held by the bank and collected for the surety's benefit, the latter at no time to draw his account below the sum due on the note, upon the failure of the bank the depositor is entitled to any sum that the receiver may collect from the principal in the note, the agreement between the bank and the depositor being an equitable satisfaction of the note as to the latter, and making it his property.

From the Marion Superior Court.

*W. H. H. Miller* and *J. B. Elam*, for appellant.

*J. C. Green, W. W. Herod, W. P. Herod, F. Winter, A. Baker* and *E. Daniels*, for appellee.

MITCHELL, J.—The questions for decision in the present case arise out of the following facts: On the 26th day of May, 1881, Alfred and John C. S. Harrison were partners, engaged in a general banking business in the city of Indian-

apolis. They loaned to Joshua G. Adams fifteen hundred dollars, for which he executed his note, due in ninety days, with Nathaniel N. Morris as surety. The note was not paid at maturity, and the evidence shows that payment was requested of Morris, who thereupon instructed the proprietors of the bank to charge the amount due on the note to his account, he having at the time an amount of money on deposit in the bank in excess of the sum due on the note. For prudential reasons, suggested by the bank, it was agreed that for the time being the note should not be charged up to Morris' account, but that the bank should consider an amount of the account equal to the sum due on the note as subject to be applied in payment thereof at any time, and that the note should remain and be held thenceforth by the bank, and be collected from Adams for Morris' benefit. The account was at no time to be drawn down to an amount less than that due on the note. Morris actually had to his credit from that time forward a balance in excess of the sum due on the note, and this balance was used by the bank in its general business, the same as was the money left by other depositors. The matter remained in this condition until July, 1884, when the bank failed, and its assets were taken in charge by the Marion Superior Court and placed in the hands of a receiver, at which time Morris had to his credit upwards of $4,000. The Adams note came to the hands of the receiver as part of the assets óf the bank, and the latter collected from the principal maker about fourteen hundred dollars, which amount Morris claims should be paid over to him, he, as he alleges, having paid the note to the bank as surety for Adams.

The foregoing, among other facts, were set up in an intervening petition by Morris, who asked that the receiver be ordered to pay over the money so collected from Adams to him. The judgment at special term, which was adverse to the petitioner, was reversed on appeal to the general term, and the receiver now prosecutes this appeal.

Whether or not the petitioner may require the receiver to

pay over the money collected by the latter from Adams, depends entirely upon the force and effect of the agreement between him and the bank.

On the receiver's behalf it is contended that the rights of the parties were in nowise affected by the agreement; that without the agreement the bank had the right to appropriate a sufficient amount of Morris' deposit to the payment of the note after it became due, and that the agreement therefore conferred no right which the bank did not have before it was made. This position is untenable. It is a peculiarity of a deposit of money in bank that the moment the money is deposited it becomes the property of the bank, and the bank and the depositor assume the legal relation of debtor and creditor. *Bank of Republic* v. *Millard,* 10 Wall. 152; *Carr* v. *National Security Bank,* 107 Mass. 45; *Commercial Nat'l Bank* v. *Henninger,* 105 Pa. St. 496; Morse Banks and Banking (3d ed.), section 289.

The general rule in keeping the account of a depositor is, that as money is paid in and drawn out a balance may be considered as struck at the date of each payment or entry on either side of the account, and it is the right of the bank, in case the depositor becomes indebted to it, by note or otherwise, and the deposit is not specially applicable to a particular purpose, or there is no express agreement to the contrary, to apply a sufficient amount thereof to the payment of any debt due and payable from the depositor to the bank. *Second Nat'l Bank, etc.,* v. *Hill,* 76 Ind. 223; *National Mahaiwe Bank* v. *Peck,* 127 Mass. 298; *Commercial Nat'l Bank* v. *Henninger, supra.* This results from the right of set-off, which obtains between persons occupying the relation of debtor and creditor, and between whom there exists mutual demands. It is familiar law, however, that mutuality is essential to the validity of a set-off, and that, in order that one demand may be set off against another, both must mutually exist between the same parties. Accordingly, it is settled that a bank can claim no lien upon the deposit of one partner, made on his

separate account, in order to apply it on a debt due from the firm, nor can the joint and several note of three persons be paid out of the individual deposit of one, unless he be the principal and the others sureties, or unless it becomes necessary in order to do complete equity or avoid irremediable injustice. *Watts* v. *Christie,* 11 Beav. 546; *Dawson* v. *Real Estate Bank,* 5 Ark. 283; *Sefton* v. *Hargett,* 113 Ind. 592; Morse Banks and Banking, section 326.

It follows that, in the absence of a contract giving it the right to do so, the bank could not have applied money due the petitioner, as a depositor, to the payment of the note upon which he was surety, any more than it could have successfully pleaded the note as a set-off, in case the petitioner had brought suit to recover the balance due him on deposit.

Did the agreement change the previously existing relations between the parties in respect to the deposit account, and confer upon the bank any new rights or impose upon it any new duties in respect to the deposit? That it did seems clear beyond any question. In the absence of a special agreement, it is the right of a depositor, so long as the balance of his account exceeds the amount of any debts due and payable by him to the bank, to draw his check against the amount, and the bank is bound to honor his check, even though it may hold notes upon which the depositor is surety, unless circumstances of an extraordinary character exist. Hence, as we have seen, the petitioner had the right, in the absence of any agreement, to check out his entire balance. *People's Bank* v. *Legrand,* 103 Pa. St. 309. A bank deposit is subject, however, to any arrangement which the depositor and the bank may make concerning it, so long as the rights of third parties are not injuriously affected. *Howard* v. *Roeben,* 33 Cal. 399; *Chiles* v. *Garrison,* 32 Mo. 475; *Nat'l Bank, etc.,* v. *Smith,* 66 N. Y. 271; *McEwen* v. *Davis,* 39 Ind. 109; Morse Banks and Banking, section 188.

A case in all respects parallel in principle to the present, arose out of the following facts: A depositor, having a bal-

Lamb, Receiver, v. Morris.

ance to his credit, requested his bank to pay a debt for him, agreeing that the balance should be applied in repayment. The bank paid the debt, and the depositor gave his note for the amount to the bank. Before the balance was actually applied and the account adjusted, the bank failed, holding the depositor's note, which, with the other assets of the bank, was taken possession of by a receiver. In an action by the receiver to collect the note, it was held that the agreement effected an equitable appropriation of the balance of the deposit account to the payment of the note. *Chase* v. *Petroleum Bank*, 66 Pa. St. 169.

In *Coats* v. *Donnell*, 94 N. Y. 168, it appeared that the cashier of a bank in Kansas City orally agreed with a banking house in the city of New York, that if the latter would accept drafts amounting to $35,000, which the Kansas City bank had drawn upon it, the Kansas City bank would keep on deposit with the New York house an amount equal to the drafts drawn, and that the drawees should have a lien on the fund, with the right to appropriate so much of it as remained unpaid on the acceptances. Shortly after the arrangement was consummated the Kansas City bank failed, and made an assignment for the benefit of its creditors. The assignee brought suit to recover the amount of the deposit from the banking house in New York. It was held that the agreement authorized the bank to appropriate the deposit to the payment of the acceptances.

It is an uncontroverted fact in the present case, that the petitioner directed the bank to charge the amount of the note and interest to his account, and although it was arranged at the suggestion of the bank that the actual entry should not be made at the time, it was agreed that it might be made at any subsequent time, and that the bank should retain the note, and collect it for the depositor's benefit. This amounted to an equitable satisfaction of the note so far as respects the petitioner, and made it his property. The agreement was upon a sufficient consideration, and after it was made the de-

positor had at no time the right to draw his account down without leaving an amount equal to the sum due on the note. A court of equity proceeds upon the principle that all agreements are considered as performed, which are made for a valuable consideration, in favor of persons entitled to insist upon their performance. Snell Eq. 45; Pom. Eq. Jur., sections 364, 365.

The depositor having fully performed his part of the agreement, equity will regard that as done which ought to have been done. Receivers and assignees take the property which comes into their possession as such, subject to all legal and equitable claims of others. *Cook* v. *Tullis,* 18 Wall. 332; *Stewart* v. *Platt,* 101 U. S. 731; *Smith* v. *Felton,* 43 N. Y. 419; *In re Howard Nat'l Bank,* 2 Low. 487. *Casey* v. *Cavaroc,* 96 U. S. 467, is not in conflict with anything herein decided.

There was nothing in the conduct of the petitioner upon which to predicate an estoppel *in pais.*

The judgment of the general term is affirmed, with costs.

Filed April 4, 1889.