T. I. STONER, Appellant, v. FRANK STEHM et al., Appellees.

CONTRACTS: Merger—Nonmerger of Oral in Subsequent Written
1  Contract. An oral contract on a distinct consideration, and in no manner varying or contradicting a later written contract between the same parties on another and different consideration, is not merged in said written contract, even though said oral contract was the inducing cause for the execution of the written contract.

EVIDENCE: Parol As Affecting Writings—Ambiguous Recital of Set-
2  tlement. An ambiguous written recital of the settlement of differences between parties may be aided by parol testimony in order to identify the differences actually settled.

CONTRACTS: Validity—Public Policy—Inducing Allowance of Claim
3  Against Public. A contract by which a party agrees to use his in-

fluence to induce a municipality to allow a just and legal claim against it is valid, in the absence of any showing that nonlegitimate means were contemplated.

Headnote 1: 13 C. J. p. 598. Headnote 2: 22 C. J. p. 1267. Headnote 3: 13 C. J. p. 431.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

MARCH 10, 1925.

REHEARING DENIED OCTOBER 31, 1925.

ACTION by way of counterclaim upon an oral contract. The facts are stated in the opinion. Verdict and judgment in favor of the defendant, and plaintiff appeals.—*Affirmed.*

*George Cosson* and *Harold H. Newcomb*, for appellant.

*Clark, Byers & Hutchinson, Gregory Brunk*, and *Louis A. Parker*, for appellees.

STEVENS, J.—I. Appellant is the owner of a two-story structure, 40x310 feet, located at, and known as, 814 Tuttle Street, in the city of Des Moines, which he leased, in 1906, to the Enamel Concrete Company for a machine shop. This lease was renewed in 1916 for another term of five years, and a new lease was executed, June 14, 1920, for a somewhat indefinite term. The latter lease was also signed by the Win Her Washer Company and the appellee Stehm, for himself and as secretary of the Enamel Concrete Company. On or about December 20, 1920, appellant commenced an action against his lessees for rent, aided by a landlord's attachment. A settlement of the claim for rent was effected; but the appellee Stehm interposed a counterclaim against appellant, in his own behalf and as assignee of his colessees, of their interest in the subject-matter thereof, alleging that, prior to the execution of the lease of May 9, 1916, appellant, as an inducement to its execution, and as compensation for the inconvenience and difficulties suffered by lessees as the result of a change in the grade of Tuttle Street

1. CONTRACTS: merger: non-merger of oral in subsequent written contract.

and the tracks of the Des Moines Union Railway Company, which were adjacent to the building, orally promised and agreed to pay them one half of the damages recovered from the city on account of the change of the street grade.

The only issues submitted to the jury were those arising on the counterclaim. Appellant challenges both the truth and the competency of the testimony of appellee offered in support of the alleged oral contract. It is conceded that appellant and the city entered into a written contract, on or about March 24, 1917, by the terms of which the latter agreed to raise the floors of the leased building and otherwise conform it to the grade of the street and the right of way of the railway company, which was four feet higher than originally. The work under this contract was not done, however, until in the fall of 1920 and the early part of January following. That the change of the street grade, which caused the water and dirt to be carried into the building, caused lessees considerable inconvenience and difficulty is not denied. The evidence shows that the city expended over $4,000 in the improvement of the building and premises.

It also appears without conflict in the evidence that, prior to the execution of the lease of June 14, 1920, which also purports to evidence a settlement of controversies between the parties, appellant commenced and prosecuted to judgment an action of forcible entry and detainer against the Enamel Concrete Company. Except merely formal matters, the rest of the testimony is irreconcilable. Appellee testified, in substance, that, in March, 1916, prior to the expiration of the original lease, a conference between himself, appellant, and Owen Ruffcorn, secretary of the Enamel Concrete Company, was had, to consider the subject of its renewal; that, at this conference and at a later one, appellant proposed that, if the lessee would renew the lease, so that he would have something to show that the building was valuable for rental purposes, he would allow the company one half of the damages he recovered from the city, caused by the change of street grade, or one half of the cost of repairing the building so as to make it conform thereto; that appellant explained that, if the building was empty, "it would look like a morgue," and the city council would do nothing in the way of a settlement; that, in reliance upon this oral promise of appellant's, the lease

of 1916 was executed; that, at the time of its execution, appellee suggested that the oral agreement be made a part thereof, but that appellant objected, saying that he wanted a straight lease to show to the city officials. Appellee also testified that he agreed to use his influence with the city council to get a settlement of the damages to the leased premises, and that he did interview certain members thereof, and that frequent conferences were had with appellant about the matter. All of the above testimony of appellee was admitted by the court over the objections of appellant that it tended to vary and contradict the terms of a written instrument.

Appellant denied the testimony of appellee as to the oral contract, and asserted that the only reference he ever made to a division of the damages was in connection with a proposition to sell the property to the Enamel Concrete Company, or to appellee.

The lease of June 14, 1920, contained the following provisions:

"Whereas, differences arose between the said companies and the lessor T. I. Stoner, necessitating an action of forcible entry and detainer on the part of the said lessor, T. I. Stoner, for the immediate possession of said property, resulting in the judgment of the court in favor of the plaintiff, T. I. Stoner, and

"Whereas, the said Enamel Concrete Company, Frank Stehm and the Win Her Washer Company, are desirous to remain in the possession of said premises

"Therefore, in order to compose and settle all differences heretofore existing the following agreement is this 14th day of June, 1920, entered into, to wit:"

With reference to the alleged oral agreement which forms the basis of appellees' counterclaim, it is the position of appellant: (a) that no such agreement ever existed; (b) that, if same is proven by the evidence, it will be conclusively presumed that its terms were merged in the lease of May 9, 1916, and the testimony offered in support thereof was admitted in violation of the parol-evidence rule; and (c) that, if neither of the above contentions of appellant is correct, appellees' claim was conclusively settled and adjusted by the provisions of the lease of

June 14th quoted supra, and for this reason parol evidence of the agreement was not admissible.

The applicability of the parol-evidence rule and its so-called familiar exceptions to proven facts often present a question very difficult of solution.

First, as to the lease of May 9, 1916: This is the instrument that was executed, as appellee claims, in pursuance of the alleged oral contract. The relation of landlord and tenant at this time existed between appellant and the Enamel Concrete Company, of which the appellee Stehm was a stockholder and officer, under the original lease entered into in 1906.

During the fall of 1915, the grade of Tuttle Street and the tracks of the Union Railway Company had been raised four feet, thereby subjecting the first floor of the leased building to overflow, with the consequent deposit of dirt on the floor thereof. For this reason, according to the testimony of Stehm, the officers of the Enamel Concrete Company were objecting to a renewal of the lease. It was in this connection that appellee claims that appellant stated that he desired to go to the city with a lease by which he could demonstrate that the property was valuable for rental purposes, and that, if a new lease was executed, he would allow the lessee one half of any sum recovered as damages from the city, or of the cost thereto of conforming the building to the new street grade. Stehm testified that the lease of May 9th would not have been entered into by the Enamel Company, but for this oral promise and agreement as to the division of the damages recovered from the city. The lease of May 9th was complete in every detail, and was for a term of five years, for a monthly rental of $166 2/3 per month for the first two years of the term, and $200 per month for the succeeding three years thereof. No reference is found in this lease to the subject-matter of the alleged oral agreement.

It is the contention of appellee that the alleged oral agreement was wholly collateral to the writing, related to a different subject-matter, and is supported by a separate and independent consideration. If this contention is to be sustained, then two contracts were entered into: one in writing, and the other oral.

It does not require the citation of authority to the point that, if the oral contract was independent of the writing, and

does not vary, alter, or contradict its terms, parol evidence was admissible to prove the same. We think this is the exact situation. The consideration for the oral contract was, to some extent, the settlement of the inconvenience suffered by the lessees on account of the change in the grade of the street, and the promise on the part of the officers thereof to assist appellant to secure a settlement with the city of his claim for damages. The evidence tends to show that some effort was made by Stehm to secure a settlement of the claim. On March 24, 1917, appellant entered into a contract with the city, by the terms of which the latter agreed to alter the leased building so as to conform it to the new grade; and the lease of June 14, 1920, contained provisions designed, as we understand it, to enable the city to carry out its contract. The parol evidence complained of in no sense tended to vary or alter any of the terms or provisions of the lease of May 9th. If it contradicted it in any way, it was because it operated to vary and add to the consideration therefor. This it did not do, for the reason that it added nothing to the burden of the lease, and, at best, formed only an inducement to the lessee to enter therein. The performance of every term and provision of the lease upon the part of the lessee was the same as it would have been if the alleged oral agreement had not been entered into.

It appears from the record that the interest of the concrete company in the oral agreement was assigned to Stehm in writing. This assignment was prepared by J. L. Parrish, an attorney in the city of Des Moines. Parrish testified

2. EVIDENCE: parol as affecting writings: ambiguous recital of settlement.

that appellant was present when the matter of the assignment was discussed, at which time the alleged oral agreement was specifically referred to. This is denied by appellant. The case was tried by appellee and submitted to the jury in the court below upon the theory that the provisions of the lease of June 14, 1920, quoted above, were ambiguous, in that the specific differences purporting to have been settled thereby were not referred to therein. Upon this theory, parol evidence was admissible to identify the subject-matter of the stipulation. *Sutton v. Weber,* 127 Iowa 361; *Miller v. Morine,* 167 Iowa 287; *Witthauer v. Wheeler,* 172 Iowa 225; *Canfield Lbr. Co. v. Kint Lbr. Co.,* 148 Iowa 207.

Appellee testified that the subject-matter of the oral agreement was not mentioned in connection with the execution of this latter instrument; that no controversy existed on that subject. Appellant, as stated, denied that the alleged oral agreement ever existed. The court, however, submitted the question to the jury as to whether the item in question was included in the alleged settlement. Apparently, the matters adjusted were those growing out of the litigation referred to therein, or out of the previous tenancy. The parol testimony complained of did not in any way tend to vary, contradict, or alter any of the terms of the latter lease.

II. Some contention is made by counsel for appellant that the alleged consideration for the oral contract, in so far as appellee was required thereby to use his influence to secure a

3. CONTRACTS: validity: public policy: inducing allowance of claim against public.

settlement with the city council, was contrary to public policy and void. There is nothing in the testimony to indicate that the parties intended that Stehm was to do more than assist appellant in a legitimate way to secure a settlement. This being true, the contract was not invalidated upon the ground that it contravened public policy. *Cole v. Brown-Hurley Hdw. Co.,* 139 Iowa 487; *Herrick v. Barzee,* 96 Ore. 357 (190 Pac. 141).

III. Counsel for appellant requested the court to give numerous instructions. Several of the requested instructions were based upon the thought that the parol evidence introduced did not come within any of the exceptions to the parol-evidence rule, because there was no claim of fraud or misrepresentation which induced the execution of the contract. These instructions were properly refused. There was, in fact, no charge in the petition of fraud, and no evidence whatever to show that any was in any way practiced. If the evidence complained of was admissible only for the purpose of proving an exception to the general rule, the motion of appellant to direct a verdict should have been sustained, rather than the jury instructed on issues not presented. Some slight testimony was elicited on cross-examination, to the effect that one half of the damages recovered from the city was to be paid appellee as a rebate or repayment of rent. Instruction No. 6, requested by appellant, was based upon the inference to be drawn from this testimony: The in-

struction was faulty, in that it assumed matters not properly inferable from. the testimony referred to. An instruction embodying the thought of counsel might properly have been given; but, in view of the burden placed upon appellee by the instructions of the court, we are of the opinion that appellant was in no respect prejudiced by the failure to so instruct.

Other questions argued by appellant do not present grounds for reversal, and we shall not further consider them. For the reasons indicated, the judgment of the court below is—*Affirmed:*

FAVILLE, C. J., and DE GRAFF and VERMILION, JJ., concur.